```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS


LAWRENCE A. MINNICK,            )
                                )
               Plaintiff,       )
                                )
vs.                             )    Case No. 08-1091-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
               Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On March 18, 2005, administrative law judge Michael R. Dayton issued his 1st decision, finding that plaintiff was not disabled (R. at 31-40).  On July 15, 2005, the Appeals Council remanded the case back to the ALJ for further hearing, specifically to consider plaintiff's cardiac and orthopedic

impairments (R. at 46-47).  On June 29, 2006, ALJ Dayton issued his second decision (R. at 14-24).  Plaintiff alleges disability beginning January 6, 2000 (R. at 14).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 6, 2000, the alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: status-post motor vehicular accident with left scapula fracture, rib fractures, and compression fractures of the thoracic spine, peripheral vascular disease status/post lower extremity angioplasty and stent placement, artherosclerotic disease, and degenerative disc disease of the lumbar spine (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is able to perform past relevant work as an explosives operator (R. at 23).  In the alternative, at step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 23-24).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).  The Appeals Council denied review on February 7, 2008 (R. at 6).

**III.  Is the ALJ's RFC findings based upon substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

In this case, the ALJ made the following RFC findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, sit at least 6 hours of an 8-hour day with normal breaks, and stand and/or walk 6 hours of an 8-hour day with normal breaks, with pushing and pulling limited to the same weight restrictions. The claimant can occasionally use ramps and stairs, can never use ladders, scaffolds, or ropes, and can occasionally crouch, balance, stoop, kneel, and crawl. The claimant is limited in lifting above shoulder with the left hand and should avoid cold temperature extremes and avoid high concentration of dust and other fumes and gases. He should also avoid unprotected heights.

(R. at 20). In making his RFC findings, the ALJ gave great weight to the opinions of Dr. Jenkins, who performed a consultative examination on September 19, 2005 (R. at 22, 480-

487), and the testimony of Dr. Marshall on January 25, 2006 (R. at 22, 569-575).  The ALJ also noted that his findings were generally consistent with the state agency medical consultant findings of Dr. Mitchell on October 18, 2005 (R. at 22, 517-523). Furthermore, Dr. Bieri, in an evaluation on January 3, 2001, had opined that plaintiff was unable to engage in previous employment and was limited to work at the "sedentary to light physical demand level" (R. at 420-425).  The ALJ gave Dr. Bieri's opinion substantial weight in showing that plaintiff could perform light work (R. at 22).[1]

Plaintiff alleges error by the ALJ for failing to consider medical evidence submitted after the consultative examination by Dr. Jenkins on September 19, 2005 (Doc. 7 at 12).  However, the ALJ in fact gave great weight to the medical expert testimony of Dr. Marshall on January 25, 2006.  The ALJ also considered the consultative examination performed on February 24, 2006 by Dr. Lewis (R. at 22, 511-515).  Furthermore, there is no medical opinion evidence that either disputes the RFC opinions expressed by Dr. Jenkins, Dr. Marshall, Dr. Mitchell, or Dr. Bieri, or that states that plaintiff has additional or greater limitations.  The

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

ALJ relied on the opinions of these four physicians in establishing plaintiff's RFC. In the absence of any medical opinion evidence disputing the ALJ's RFC findings or the RFC opinions expressed by the four physicians, the court finds that the ALJ's RFC findings are supported by substantial evidence.

Plaintiff also argues that the ALJ's finding that plaintiff is "limited in lifting above shoulder with the left hand" is insufficiently specific. Dr. Marshall had testified that plaintiff would have "some restrictions at the light level including use of the left arm in reaching above his head" (R. at 569). Dr. Marshall later testified that it would be difficult for plaintiff to lift weights with his left arm above his shoulder (R. at 573). The ALJ incorporated that opinion into his RFC findings, and included that limitation in his hypothetical question to the vocational expert (VE) (R. at 264). Plaintiff fails to cite to any statutory or regulatory requirement that greater specificity is required when establishing a limitation on above shoulder lifting. Therefore, the court finds plaintiff's argument to be without merit.

**IV.  Did the ALJ err in his findings at steps four and five?**

The ALJ found at step four that plaintiff could perform past relevant work as an explosives operator (DOT: 737.687-042); in the alternative, the ALJ found at step five that plaintiff could perform other work that exists in significant numbers in the

regional and national economy, specifically work as a photocopier (DOT: 207.685.014), laundry folder (DOT: 369.687-018), sales attendant (DOT: 299.677-010), final assembler (DOT: 713.687-018), and an order clerk (DOT: 209.567-014) (R. at 24, 265).  Plaintiff argues that plaintiff's limitation on overhead reaching conflicts with the requirements of these jobs.  Plaintiff further argues that the ALJ failed to make the requisite findings required at step four.

The past relevant work of an explosives operator, and the five jobs that the ALJ found at step five that plaintiff could perform, all require the ability to frequently reach and handle. <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO) (U.S. Dept. of Labor, 1993 at 134, 283, 311, 313, 335, 365).  However, in the case of <u>Segovia v. Astrue</u>, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant positions require..."frequent" reaching, see SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439, 446, while Ms. Segovia is limited to occasional overhead reaching. For purposes of the SCO, however, "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction." SCO at C-3 (emphasis added). **The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching, and he testified both that she could perform**

> **the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. Aplt.App. at 391-92, 395. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.** See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.... [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."). Further, the DOT descriptions for cafeteria attendant and ticket taker do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching. See DOT §§ 311.677-010, 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

Nothing in the description of the jobs of explosive operator, photocopier, order clerk, sales attendant, laundry folder, or final assembler indicates that any of these jobs require frequent overhead reaching. Dictionary of Occupational Titles (DOT), §§ 737.687-042, 207.685-014, 209.567-014, 299.677-010, 369.687-018, 713.687-018 (4th ed. rev. 1991). The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was informed that plaintiff was limited in lifting above shoulder

10

with his left hand.  The VE then stated that plaintiff could perform the above five jobs and stated that the evidence does not conflict with the information in the DOT (R. at 264-265).  As the court held in Segovia, in these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.

Therefore, the court finds that substantial evidence supports the ALJ's step five finding that plaintiff can perform other work that exists in significant numbers in the national and regional economy.  Because substantial evidence supports the ALJ's step five findings, there is no need to review the ALJ's alleged failure to make the requisite findings at step four because, even if the ALJ erred in his step four findings, any such error would be harmless in light of the fact that the ALJ's step five findings are supported by substantial evidence.

Finally, plaintiff alleges that the ALJ erred by citing to sedentary work that Minnick could perform, noting that the medical-vocational guidelines (grids) would direct a finding of disabled for a person 54 years of age who is limited to sedentary work with a high school education and a semi-skilled work background with no transferable skills (Doc. 7 at 17).[2]

---

[2]The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. The grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a

11

However, plaintiff is not limited to sedentary work.  As defendant points out in their brief (Doc. 10 at 16 n.3), the VE indicated that, given plaintiff's RFC, the light work base is only reduced 3-5%, and the sedentary base is not reduced (R. at 265).  The VE then identified 3 light jobs and 2 sedentary jobs that plaintiff could perform given his RFC (R. at 265).  The ALJ adopted those findings in his decision (R. at 23-24).  The grid relied on by the plaintiff, 20 C.F.R. pt. 404, Subpt. P, App. 2, table 1, § 201.14 (2008 at 610), is not applicable to this case because that table is only applicable for a maximum sustained work capability limited to sedentary work.  Therefore, the ALJ did not err by citing to light and sedentary work that plaintiff could perform given his RFC.

   IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

   Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

---

particular rule.  Thompson v. Sullivan, 987 F.2d at 1482, 1487 (10th Cir. 1993).

Dated at Wichita, Kansas, on December 10, 2008.

                              s/Donald W. Bostwick
                              DONALD W. BOSTWICK
                              United States Magistrate Judge